UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN R. ATCHLEY, a married man,<br><br>        Plaintiff,<br><br>    v.<br><br>PEPPERIDGE FARM, INC., a<br>Connecticut corporation,<br><br>        Defendant.<br>_____<br>MICHAEL GILROY, a married man,<br><br>        Plaintiff,<br><br>    v.<br><br>PEPPERIDGE FARM, INC., a<br>Connecticut corporation,<br><br>        Defendant. | No. CV-04-452-FVS<br>No. CV-04-453-FVS<br><br>ORDER DENYING MOTION FOR<br>PARTIAL SUMMARY JUDGMENT |

**THIS MATTER** came before the Court pursuant to Plaintiffs' motions for partial summary judgment. The Court heard oral argument in this matter on May 18, 2005. Plaintiffs were represented by Daniel Tiffany. Defendant was represented by Jeffrey Supinger.

**BACKGROUND**

Defendant Pepperidge Farm, Inc., ("PFI") is well known producer of baked goods, which it sells in retail food stores throughout the United States. In order to deliver its products, PFI employs a force of independent contractors, to whom it grants geographically exclusive distributorships. PFI currently has over 3,000 distributors nationwide. Sometime during March 2003, two PFI

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 1

distributorships were advertised for sale in Spokane, Washington.

Mr. Spangler advertised for sale his exclusive distributorship of consigned PFI food products for an area described as "North Spokane to Colville" for the sale price of $229,500.00.  Plaintiff Gilroy answered the advertisement by calling the number listed and speaking to Mr. Spangler.  However, thereafter, Plaintiff was referred to representatives of PFI to discuss the sale of the distributorship with Mr. Spangler.

At the same time, PFI advertised for sale a second exclusive distributorship of consigned PFI food products in an area described as "Spokane Valley and Northern Idaho" for the sale price of $365,508.00.  The previous owner of this distributorship, Mr. Godwin, had abandoned his route, forcing PFI to offer it for sale on behalf of Mr. Goodwin.  Plaintiff Atchley met with a PFI employee to discuss the purchase of this PFI distributorship.

Plaintiff Atchley purchased the "Spokane Valley and Northern Idaho" distributorship, and Plaintiff Gilroy purchased the "North Spokane to Colville" distributorship.  Plaintiffs both entered into separate Consignment Agreements with PFI, which granted Plaintiffs the "exclusive right to distribute [PFI] Consigned Products to retail stores" within their respective territories.  The Agreement also granted Plaintiffs the right to use PFI's trade name, trademark and distinguishing colors" on Plaintiffs' vehicles and equipment pursuant to the conditions set forth in the Consignment Agreement.

Plaintiff Atchley paid a $25,000 down payment to PFI and financed the remainder of the purchase amount through Bank of

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 2

America. Plaintiff Atchley's check was made payable to PFI because Mr. Goodwin had "abandoned his route" and PFI was forced to sell the distributorship on behalf of Mr. Goodwin. PFI contends that the down payment was received "for the benefit of Mr. Goodwin" and was applied to Mr. Goodwin's account. PFI further contends that Mr. Goodwin ultimately received net proceeds from the sale of his distributorship after paying Mr. Godwin's bank loan debt of $173,638.67, which PFI guaranteed.

Plaintiff Gilroy paid 10 percent down for his distributorship and financed the remainder. Plaintiff Gilroy paid the purchase price in the form of a $269,550 check from Bank of America, a $4,450 check from Sterling Savings Association and an additional $25,500 personal check. Bank of America disbursed a check in the amount of $269,550.00 made payable to "David Spangler and Pepperidge Farm, Inc." $260,884.37 went to pay off Mr. Spangler's bank loan to Bank of America, which PFI guaranteed, $25,500 was paid directly to Mr. Spangler, and $9,186.28 was paid to Mr. Spangler after reconciling the sums owed PFI for outstanding inventory, commissions, and stale charges.

Plaintiffs each filed separate actions in Spokane County Superior Court against Defendant for recision of contract and damages for breach of contract, misrepresentation, and violation of Washington's Franchise Investment Protection Act. PFI removed both actions to this Court. Plaintiffs now move for partial summary judgment on their claim that Defendant violated the Washington Franchise Investment Protection Act.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 3

**SUMMARY JUDGMENT STANDARD**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 316, 323, 106 S.Ct. 2548 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). The underlying facts and inferences drawn from facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 572, 586-87, 106 S.Ct. 1348, 1356 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323-24, 106 S.Ct. 2548. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).

//

**DISCUSSION**

Plaintiffs move the Court for partial summary judgment, holding that PFI violated the Washington Franchise Investment Protection Act ("FIPA"), RCW 19.100 et seq. The FIPA requires the owner of a franchise to register the franchise with the Washington State Securities Division of the Department of Financial Institutions. RCW 18.100.040. PFI acknowledges that it is not registered with the State of Washington as a franchise, but contends it is not obligated to do so because the FIPA is inapplicable.

For the FIPA to apply, the arrangement between the parties must meet the statutory definition of a "franchise". Under the FIPA, a "franchise" is defined as:

>  (a) An agreement, express or implied, oral or written, by which:
>
>  (I) A person is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan prescribed or suggested in substantial part by the grantor or its affiliate;
>
>  (ii) The operation of the business is substantially associated with a trademark, service mark, trade name, advertising, or other commercial symbol designating, owned by, or licensed by the grantor or its affiliate; and
>
>  (iii) The person pays, agrees to pay, or is required to pay, directly or indirectly a franchise fee.

RCW 19.100.010(4).

Here, to establish that they had a franchise relationship with PFI, Plaintiffs must demonstrate that (1) PFI granted Plaintiffs the right to distribute goods under a marketing plan substantially provided by PFI; (2) operation of Plaintiffs' businesses was substantially associated with PFI's trademark; and (3) Plaintiffs

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 5

paid PFI a franchise fee. Because all three prongs of this test must be met before the FIPA applies, the Court focuses first on the most disputed prong: whether Plaintiffs paid a franchise fee.

"Franchise fee" is defined, in pertinent part, as

> any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for the mandatory purchase of goods or services or any payment for goods or services available only from the franchisor, or any training fees or training school fees or charges; however, the following shall not be considered payment of a franchise fee (a) the purchase or agreement to purchase goods at a bonafide wholesale price (b) the purchase or agreement to purchase goods by consignment; if, and only if the proceeds remitted by the franchisee from any such sale shall reflect only the bona fide wholesale price of such goods; ©) a bona fide commission or compensation plan that in substance reflects only a bona fide wholesale transaction; (e) the purchase or lease or agreement to purchase or lease supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement at their fair market or rental value; (f) the purchase or lease or agreement to purchase or lease real property necessary to enter into the business or to continue the business under the franchise agreement at the fair market or rental value ....

RCW 19.100.010(f)(12) (emphasis added).

There are very few Washington cases discussing franchise fees under the FIPA. The statute suggests that a franchise fee includes "fees hidden in the franchisor's charges for goods or services." *Corp. v. ARCO*, 45 Wash. App. 563, 568, 726 P.2d 66 (1986) (holding that payments for the rental of property not at fair market value will constitute a franchise fee). Washington courts have recognized that a franchise fee may be indirect, including fees for goods or

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 6

services.  For example, a franchise existed where a principle admitted that initial charges to the agent included cost recovery for training and marketing costs.  *Lobdell v. Sugar 'N Spice, Inc.*, 33 Wash. App. 881, 892, 658 P.2d 1267 (1983) (holding that charges for the cost of finding retail locations, and company advertising and training may constitute a hidden franchise fee).  Similarly, a franchise was found where the franchisor charged the franchisee "rent" for use of the premises based on a percentage of gross revenues rather than any estimation of fair market value of the premises.  *Corp v. Atlantic-Richfield Co.*, 45 Wash. App. 563, 569, 726 P.2d 66 (1986).  *See also Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1220 (9th Cir. 1983) (mandatory purchases of motor oil and other products constituted franchise fee).  However, a franchise fee was not found where the purported franchise agreement allowed for a fixed rate to be paid to the agent, while a markup was retained by the principle.  *Corporate Resources, Inc.* v. *Eagle Hardware & Garden, Inc.*, 115 Wash. App. 343, 350, 62 P.3d 544 (2003) (holding that profit margins on installation contracts are not characterized as an indirect franchise fee under FIPA).

Here, Plaintiffs argue that the amount they paid to purchase the PFI distributorships ($225,000 paid by Mr. Atchley and $299,500 paid by Mr. Gilroy) was a franchise fee because they paid for the "right to enter into business" with PFI.  However, PFI argues that Plaintiffs both purchased a distributorship, not the right to enter into a distributorship, and that Plaintiffs both purchased their distributorships from the previous owner of the distributor, not PFI.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 7

1  The Court concludes that material issues of fact preclude
2  summary judgment on Plaintiffs' claim that Defendant violated FIPA
3  because Plaintiffs have not shown that they paid a franchise fee.
4  Although Plaintiffs argue that the money they paid to purchase their
5  PFI distributorships really constituted a "fee or charge" that
6  Plaintiffs "were required to pay for the right to enter into a
7  business" with PFI, RCW 19.100.010(12), PFI submitted evidence
8  showing that Plaintiffs' purchased their PFI distributorships from
9  the previous owners of the distributors, not PFI.  Plaintiff did not
10 refute this evidence.  Plaintiffs have not shown that they paid PFI
11 any money for the "right to enter into business" with PFI.
12 Plaintiffs have not shown that there were any hidden fees in their
13 purchase prices or that PFI retained any of the money paid for the
14 purchase of the distributorship.
15  The Court notes that the primary purpose of the FIPA legislation
16 was to protect franchisees from losing money invested in the
17 franchise.  *See Lobdell*, 33 Wash. App. at 888.  At least one
18 Washington court has found this to be critical in making a
19 determination regarding the presence of a franchise fee.  *See*
20 *Corporate Resources, Inc. v. Eagle Hardware & Garden, Inc.*, 115 Wash.
21 App. 343, 350, 62 P.3d 544 (2003) (holding that contractor for
22 hardware store was not a franchise where there was no "unrecoverable
23 investment").  Here, Plaintiffs have not shown that they made any
24 unrecoverable investment in PFI.  Nor does the record reflect that
25 Plaintiffs' predecessors, Mr. Spangler and Mr. Goodwin, paid any
26 unrecoverable investment in PFI.  Therefore, the Court cannot

conclude that Plaintiffs' purchases of their respective distributorships from Mr. Spangler and Mr. Goodwin constitutes a franchise fee.

**CONCLUSION**

Based on the foregoing analysis, the Court concludes that material issues of fact exist precluding summary judgment on the issue of whether Defendant violated the FIPA. The undisputed facts, when viewed in the light most favorable to Defendant, do not support a conclusion that Plaintiffs paid a franchise fee. The undisputed evidence shows only that Plaintiffs purchased two PFI distributorships. The Court does not engage in further analysis of the other prongs of the FIPA test. Accordingly,

**IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment, (**Ct. Rec. 2 in CV-04-452-FVS**)(**Ct. Rec. 2 in CV-04-453-FVS**) is **DENIED**.

2. Defendant's Motion to Compel, (**Ct. Rec. 62 in CV-04-452-FVS**)(**Ct. Rec. 62 in CV-04-453-FVS**) is **GRANTED IN PART**. Plaintiffs shall provide Defendant with all discovery related to Plaintiffs' future expectation damages within two weeks.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this <u>20th</u> day of May, 2005.

                                        s/ Fred Van Sickle
                                          Fred Van Sickle
                            Chief United States District Judge